Steven B Cummings
1110 Yellowstone Ave #222
Pocatello, ID 83201
801-550-5033

U.S. COURTS
DEC 3 1 2015
Rcvd_____Filed____Time____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Steven B Cummings, a married individual residing in Idaho<br><br>Plaintiff,<br><br>vs.<br><br>STEWART TITLE GUARANTY COMPANY, a Texas Corporation,<br>JOHN DOES 1-10<br><br>Defendant | Civil Action No. 4:15-CV-00599 |

## COMPLAINT
## &
## DAMAND FOR JURY TRIAL

Plaintiff, Steven B Cummings (Cummings), complains and alleges as follows:

### 1. INTRODUCTION

1.1     This complaint arises from ongoing damages being caused to Cummings by a title insurance company's actions and/or failures to act in a pattern of wrongful conduct committed by their agents relative to Cummings purchase of real property located in Bear Lake County, Idaho.

1.2     Initially, Cummings was conveyed the most important parcels of land as agreed and Cummings was expecting to receive under the terms and conditions outlined under the written Real Estate Purchase Contract and Assignment, Warranty Deed and Escrow Instructions

COMPLAINT                                                                                                    Page 1

referring to Preliminary Title Commitment NTBL-1183. More than three months after Cummings fully complied with all terms and conditions outlined under the written agreements he entered into, Northern Title an agent for Stewart Title, wrongfully altered Cummings original Warranty Deed which was intercepted without an executed amendment, authorization or notice (all 3 being requirements under statute of frauds) removing 83 acres of land.

      1.3      Cummings purchased a policy of title insurance to insure against title defects to include but not limited to inadequate legal descriptions, mistakes and omissions resulting in improper abstracting, failure to include necessary parties to certain judicial proceedings, improperly recorded legal documents, false impersonation of the true land owner, adverse possession, conveyances in violation of public policy to list a few and as represented by Preliminary Title Commitment NTBL-1183. Rather than issue the paid for policy, of title insurance as represented and agreed, a policy of title insurance was issued eight months later inconsistent with the only warranty deed all parties agreed upon and as represented in Preliminary Title Commitment.

      1.4      Damages continue to mount as a result of Cummings pursuit to clear his title and protect his fundamental property rights and interests as guaranteed to all citizens under both State and Federal Constitutions.

      1.5      While Cummings has provided actual, constructive and written proof of loss pursuant to numerous title defects, Stewart Title continues in a pattern and practice to ignore its fiduciary responsibilities owed to Cummings. Ironically, in this case the parties having caused and continuing to cause Cummings the most stress and harm are the very entities commissioned and contracted to give peace of mind by protect Cummings interests.

## 2. PARTIES

2.1 Based upon information and belief, and on that basis Cummings alleges, that Defendants are responsible for each of their acts and conduct, which are the true legal causes for the alleged damages herein outlined or to be determined at trial.

2.2 At all times relevant to the true legal causes, Cummings has been a citizen and permanent resident of the United States and a citizen or resident of a State other than Texas.

2.3 Cummings has been a resident domiciled in Idaho.

2.4 Based upon information and belief Defendant Stewart Title is registered and organized as a corporation under the laws of Texas, and doing business in the State of Idaho.

## 3. JOHN DOE ALLEGATIONS

3.1 The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants JOHN DOES 1 through 10, inclusive, are either undetermined or unknown to Cummings to be named at this time, and Cummings, therefore, sues said Defendants by such fictitious names. Cummings will ask leave of Court to amend this Complaint when the same shall have been ascertained or determined. Cummings is informed and believes, and thereon alleges, that each JOHN DOE Defendant is responsible intentionally, or in some other actionable manner, for the events and happenings referred to herein, which proximately caused injury and damage to Cummings, as hereinafter alleged.

3.2 Any reference to Defendants shall refer to all defendants herein: each named Defendant, each JOHN DOE Defendant, and all JOHN DOE Defendants.

**4. JURISDICTION AND VENUE**

4.1 This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this Complaint raises federal questions. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.2 Defendant Stewart Title is a corporation organized under the laws and registered in the State of Texas doing business with the Plaintiff Cummings in the State of Idaho. Jurisdiction is conferred upon this Court by 28 USC § 1332

4.3 The Court has personum jurisdiction over Defendants because they have purposefully engaged in unfair business practices, tortious interference, *et al.*, using property owned by Cummings in Idaho, and Defendants committed tortious acts and conduct in breach of contract in Idaho, knew or should have known that their activities were directed towards Idaho, and that the effect of those activities would be felt in Idaho.

4.4 The Court also has personum jurisdiction over Defendants because they have purposefully availed themselves of the opportunity to conduct commercial activities in this forum. The Complaint arises out of those commercial activities.

4.6 Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) in that substantial injury occurred and continues to occur in this district, a substantial portion of the events that are the subject of this action took place in this district, Cummings has been a resident in this district, and the Defendants are subject to personum jurisdiction in this district.

4.7 The amount in controversy exceeds $75,000.00.

### 5.   AGENCY

5.1   At all times herein mentioned, some Defendants are the agent, servant, joint venturer, partner, or employee of the other Defendants, successor corporations, successors in interest, or entities and, in doing the things herein alleged, was acting within the purpose and scope of said agency or employment at the time of the incident. The Defendants acted within the scope and course of that agency and employment and with the knowledge and implied and/or express consent and permission of the other Defendants.

### 6.   FACTS

6.1   In July of 2007, an agent for Stewart Title by reference Northern Title Company of Idaho (Northern Title) issued a "Commitment for Title Insurance" (also referring to a "Preliminary Title Report)" with a legal description describing the entire Stephen's Ranch including acreage it didn't own with no exceptions of property on behalf of Stewart Title Guaranty Company (Stewart Title) and acted as an escrow agent for Cummings' purchase of assignment of property owned by the Roger L. And Barbara L. Stephens Trust.

6.2   In accordance with the Escrow Instructions, through its agent Northern Title, Stewart Title agreed to issue a title policy in accordance with the title commitment that included a legal description describing the entire Stephen's Ranch with no exceptions of property. The policy premium of $2,442 was paid in full at the time of closing for a title insurance policy based on the title commitment the legal description describing the entire Stephen's Ranch with no exceptions of property.

6.3   The title commitment described property consisting of more than 350 acres, commonly referred to as the "Stephens Ranch," that existed on both sides of Highway 30, a few miles north of Montpelier, Idaho. Stewart Titles agent Northern Title without notice to Cummings altered the legal description to except all acreage on east side except within parcel A

consistent with the Stephen's Ranch as owned by Roger L. And Barbara L. Stephens Trust. Northern Title issued a new title commitment and on August 3, 2007, a Warranty Deed signed by the sellers containing the attached legal description with new exception language as described above which was specifically initialed by sellers.

**Facts relevant to East side Property:**

    6.4    On November 8, 2007, without notice to Cummings, Roger L. Stephens contacted Northern Title alleging that he didn't intend to sell east side of Stephens Ranch. On or about 2:56 pm that same day without any notice, amendment or approval from Cummings, Stewart Title agents from Northern Title altered and re-recorded the August 3, 2007, Warranty Deed with original signatures, this time removing 83 acres, and then re-recording the deed. Again, Northern Title did so absent notice or consent having been sought or obtained from Mr. Cummings in a manner consistent with the escrow instructions referring to NTBL-1183 title commitment, and REPC, nor did Stewart Title agents obtain the signatures from the sellers authorizing any changes. This acreage was obtaining income from a 10 year CRP contract, worth $28,991.07.

    6.5    Without knowledge or consent of Cummings, the title policy of insurance was altered from what was agreed during original application under title commitment and escrow instructions and then not having been issued until April 9, 2008 more than eight months after closing. It was not until that time that Cummings discovered that the deed to his property had been altered.

    6.6    In May of 2008, Cummings sent actual and constructive notice of proof of loss to Stewart Title through its agent Northern Title who received written notice of proof of loss demanding a correction to the deed to reflect what was in the original warranty deed and real

estate purchase agreement. Stewart Title failed to respond to the demand. Cummings ultimately filed a lawsuit against the sellers.

6.7     Without addressing Cummings notice of proof of loss and without any notice to Cummings, Stewart Title agent Northern Title entered into an agreement with the sellers to indemnify sellers against any and all claims made by Cummings. In June of 2011, after Cummings obtained Northern Title's file by subpoena, Cummings amended his complaint to add Northern Title as a defendant.

6.8     In late July and early August of 2012, a bench trial was held in Bear Lake, County in Idaho District Court. The Court held that there is no evidence to show that sellers altered the deed the first or second time removing the 83 acres on the east side of the highway. In a January 2013 written decision, the trial court held that Northern Title's unauthorized alteration of the warranty deed constituted a breach of the escrow agreement. In addition, the Court held that Northern Title's conduct constituted gross negligence and/or willful misconduct or both. The Court awarded Cummings $50,000 in damages for Northern Title's conduct as "abstractor of title." In spite of confusion with title policy wherein Northern Title represented itself as the Title Insurance Company of Idaho under schedule A, the Court held that Northern Title was not liable to Cummings as the "title insurer" because the Court ultimately held that Stewart Title was the insurer and that Northern Title was an agent for Stewart Title.

6.9     Both Cummings and Northern Title appealed the decision to the Idaho Supreme Court. The Supreme Court issued an Opinion in September of 2014, in which a petition for re-hearing was denied in November of 2014. That Opinion upheld the district court's decision dismissing the sellers. The Supreme Court did not overturn the district court's finding of fact that the August 3, 2007, deed had been improperly altered in November of 2007, but rather held that Cummings was not entitled to specific relief re-conveying the property back to him because

there had been no quiet title action in the district court. The Supreme Court also reversed the $50,000 judgment against Northern Title because under Idaho law Northern Title was not an "abstractor of title." However, the Supreme Court left undisturbed the trial court's findings that Northern Title's conduct constituted breach of contract and gross negligence, willful misconduct and/or or both.

6.10 As a result of the litigation and the conduct of Stewart Title's agent Northern Title, Cummings does not have title to the entire Stephens Ranch as bargained for as was agreed to under the purchase contract, title commitment, and warranty deed, having lost title to the 83 removed acres from the east side. The value of that acreage in 2007, as determined by the enclosed appraisal was $153,000.

6.11 Pursuant to post appeal proceedings, Cummings now has a judgment against him for attorney fees from both the sellers and Northern Title of $162,363 (Northern Title), and $155,209 (Roger Stephens). Cummings has incurred costs of no less than $30,000. He has incurred his own attorney fees in an amount of no less than $200,000. This is only an initial estimate of damages which are ongoing while the matter remains unresolved and Cummings is not made whole. Additionally, Cummings has suffered both in his intentions for the property and his reputation in the community (which has been smeared by agents of Northern Title.)

6.12 An April 7, 2009, log kept by Stewart Title agent Northern Title contains the following pertinent entry: "Confured with Monique in the Policy Department and it was agreed that we send this Policy out as the PR was prepared from the original REPC that the property be vested in the Steven B. Cummings... and so will the policy. We have no authority to put the property into the trust." Contrary to the explicit instruction of its title agent, Stewart Title Northern Title instead issued a policy not consistent with the REPC and the preliminary title commitment, in that it excluded the 83 east side acres. In that this information was not obtained

until late into the case, Cummings could not feasibly or legally pursue a claim under what should have been the correct policy until the litigation was completed and its subsequent finding of acts, as well as the various damages resulting from the outcome of that litigation were known.

6.13 Now knowing that Stewart Title's agent Northern Title failed to issue a policy as agreed in the first place and its failure to correct that policy when it was notified to do so has resulted in cascading and financially devastating setbacks to Cummings as the insured beginning with the loss of his property and CRP income and ending with massive judgments against him for attorney's fees.

**Actual, Constructive and Written Notice of Proof of Loss:**

6.14 Upon information and belief, Cummings alleges that Stewart Title received actual and constructive notice through its agent Northern Title who received written notice of proof of loss and rather than respond within 30 days as required by law or affirm or deny coverage of claims within a reasonable time thereafter, sellers were indemnified (who are not the insured) while Northern Title attempted to shield itself from liability, contrary to its fiduciary and statutory responsibilities. Again, although the courts ultimately held that Stewart Title agent Northern Title was not liable as an "abstractor of title," it did find that the company breached the escrow contract, and committed willful misconduct and/or gross negligence in altering and re-recording Mr. Cummings' deed without written authorization from either party – and well after the purchase funds including the price of the title policy were paid.

**Facts relative to West side property :**

6.15 During the process of litigation, Stewart Title agent Northern Title revealed that additional problems with title exist under the title policy and since neither Stewart Title nor its agent Northern Title have made no good faith attempts to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear.

6.16     In attempting to sell Cummings property, Cummings learned that not only did he not receive free and clear title to the east side as agreed, he also continues to have title defects on the west side of his property.  As best Cummings was able to ascertain that part of the acreage in question (as described under the title policy) is currently listed for sale by someone else as commercial property in the amount of $24,900.

**Written Notice of Proof of Loss:**

6.17     Shortly after learning of further defects and within 60 days of a final judgment having been entered on January 27, 2015, Cummings sent a written notice of claim on March 17, 2015 to Stewart Title.  Stewart Title acknowledged receipt of the claim on or about April 6, 2015 but once again did not respond to the claim within 30 days as required by law nor have they affirmed or denied coverage of claims within a reasonable time after proof of loss has been provided.

6.18     Separate requests have been made to request a response from Stewart Title as to the proof of loss. In May, 2015 Stewart Title communicated that it is "waiting for information from its agent (Northern Title)."

6.19     Without any notice to Cummings – and while Cummings' "Proof of Loss" to Stewart Title was pending -- Stewart Title agent Northern Title sought and obtained an "Order of Sale" from the Idaho District Court, authorizing the forced sale of the balance of Cummings' property – including property that is included in Cummings' Title Policy.  In so doing, Stewart Title agent Northern Title misrepresented to the Court that the legal description attached to the Order consisted of Cummings' property as it existed on the public record. In fact, the property that the Court ordered to be sold appears to contain "exception" language which appears to exclude property covered in the title policy which had not been owned by the seller.  In other words, without any notice to Cummings and any due process under law, Stewart Title continues

in a wrongful pattern of practice in their attempts to shield itself from liability. The Order addresses the very defects which form the basis of Cummings' Proof of Loss without any redress or compensation to Cummings.

6.20    The "Order of Sale" obtained by Stewart Title agent Northern Title also single handedly wipes out all other liens on the property, without any notice or due process whatsoever to the lien holders. There are liens on the property as disclosed by Cummings secured to pay costs and damages resulting as a result of Cummings pursuit of clearing title to his property subject to agreements that Cummings has with 3rd parties. Stewart Title's actions have now tortuously interfered with such agreements.

6.21    Cummings petitioned the Idaho District Court's "Order of Sale" be vacated. Nevertheless, Stewart Title agent Northern Title continue to pursue the sale, and threatens not only to improperly take Cummings Bear Lake, Idaho, property, but also the residence of his family in Bingham County, Idaho.

6.22    Rather than acknowledge and act reasonably prompt upon written "Proof of Loss," arising under title policy, Stewart Title (through its agent Northern Title) has instead attempted to take devastating and irreparable action to deprive Cummings' his property and home, in such a manner that deprives Cummings his due process, rights under his title policy in violation of its fiduciary duties to Cummings as its insurer.

## 7. BREACH OF INSURANCE POLICY AGREEMENT

7.1    Plaintiff hereby adopts and incorporates by reference the allegations contained in all paragraphs above.

7.2    Stewart Title issued a title policy on or about April 9, 2008, that was by its own instruction to insure Cummings' title according to the title commitment and purchase agreement.

7.3     The policy provides that, upon written request by the insured, Stewart shall at its own cost and without unreasonable delay, must remedy all defects to the property covered and intended to be covered under the property, including providing for the defense of Cummings in litigation in which any third party asserts a claim adverse to the title or interest as insured, as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by the policy.

7.4     Stewart Title has received actual, constructive and written notice of such defects, yet has done nothing for its insured, Cummings

7.5     As a proximate result of Stewart Title's failure to abide to its responsibilities under the Title Policy, Cummings has suffered substantial and ongoing injuries and has had to defend his rights on his own behalf and as a result has incurred a substantial amount in reasonable and necessary legal fees and costs.

7.6     Cummings has also suffered general, specific and consequential damages to be determined at trial.

## 8.     BAD FAITH

8.1     Plaintiff hereby adopts and incorporates by reference the allegations contained in all paragraphs above.

8.2     As the title insurer, Stewart Title owes certain fiduciary duties to its insured and customer, Cummings. A fiduciary duty imposes on Stewart Title a duty to act with the utmost good faith and best interests of its insured and/or customer. Implied with this duty is a promise that Stewart would do nothing to injure, frustrate or interfere with Cummings' rights.

8.3     Such duties include a timely response to a Proof of Loss as required both under the Title Policy, and by law. Stewart Title has failed to timely respond to Cummings' actual, constructive and written proof of loss claims.

8.4     As title insurer, Stewart Title has a duty to indemnify its insured when it becomes aware of a defect in the title covered by the title policy.

8.5     Stewart Title's duty of good faith and fair dealing extends beyond closing, the issuance of the title policy and commencement of litigation.

8.6     Stewart Title has committed bad faith by putting its own interest above that of its insured and fiduciary, Cummings.

8.7     Stewart Title has also committed bad faith by putting the interests of adverse parties above its insured and fiduciary Cummings, including the seller of the property it insured under the Title Policy as well as its agent Northern Title.

8.8     Stewart Title has breached the duty of good faith and fair dealing owed toward Cummings in a number of respects as stated in the previous allegations.

8.9     As a proximate result of the unreasonable and bad faith conduct of Stewart Title, Cummings has suffered and will continue to suffer damages in an amount to be proven at trial.

### 9.     CONSPIRACY

9.1     Plaintiff hereby adopts and incorporates by reference the allegations contained in all paragraphs above.

9.2     An agreement between two or more persons to engage jointly in an unlawful or criminal act, or an act that is innocent in itself but becomes unlawful when done by the combination of actors.

9.3     Both Stewart Title and Northern Title were aware of Cummings Proof of Loss Claim.

9.4     Rather than honestly address any of Cummings claims having been given by both actual, constructive and written notice, Cummings alleges that Stewart Title conspired with John

COMPLAINT                                                                                                       Page 13

Does 1-10 to move forward with an attempt to unlawfully force the sale of Cummings properties to eliminate Cummings ability to collect under the insurance policy.

9.9   That without any notice to Cummings – and while Cummings' "Proof of Loss" to Stewart Title was pending -- Stewart Title agent Northern Title sought and obtained the "Order of Sale" from the Idaho District Court, authorizing the forced sale of the balance Cummings' property – including property that is included in Cummings' Title Policy.  In so doing, Stewart Title agent Northern Title misrepresented to the Court that the legal description attached to the Order consisted of Cummings' property as it existed on the public record. In fact, the property that the Court ordered to be sold contained "exception" language which appears to exclude property covered in the title policy.  In other words, without any notice to Cummings and any due process under law, Stewart Title has attempted to address the very defects which form the basis of Cummings' Notice of Claim without any redress or compensation to Cummings through its agent Northern Title.

## 10.   REQUEST FOR ATTORNEY FEES

10.1   Plaintiff hereby adopts and incorporates by reference the allegations contained in all paragraphs above.

10.2   As a result of the conduct by the Defendants as enumerated herein, Cummings has been required to retain the services of counsel and paralegals to assist Cummings in pursuing the prosecution of his Complaint against Defendants. Cummings is entitled to recover his attorneys' fees and costs in the pursuit of this litigation pursuant to the provisions of relevant Idaho Code and relevant Rule of Procedure in the State of Idaho, including, but not necessarily limited to, Federal Rule of Civil Procedure 54, Idaho Code §§ 12-117, 12-120, 12-121, and such further and additional provisions of the Federal Rules of Civil Procedure and Idaho Code that may be applicable.

## 11. PRAYER FOR RELIEF

11.1   WHEREFORE, having asserted various causes of action and alleging facts in support thereof, the Plaintiff Steven B Cummings prays for judgment and damages against the Defendant STEWART TITLE of no less than the policy limits of $850,000.00, JOHN DOES 1-10 and each of them:

11.2   That the Defendant Stewart Title be required to indemnify and reimburse Cummings all necessary fees and costs for having to defend his title to the property as insured under the title policy.

11.3   Requiring Defendants pay damages in contract, including consequential damages;

11.4   Finding that Defendants have breached their contracts with Cummings and their implied duties of good faith and fair dealing;

11.7   Requiring Defendants pay damages in tort, including actual, special, punitive, and consequence of Defendants' wrongful conduct complained of in this Complaint or in an amount to be determined at trial;

11.10   Requiring Defendants pay for all other legal and/or equitable relief this Court deems just and proper in the premises.

## 12. NOMINAL DAMAGES

12.1   The law which applies to this case authorizes an award of nominal damages.

## 13. JURY DEMAND

13.1   Plaintiff requests a jury trial for any issues triable by jury.

DATED this 31st day of December, 2015.

Respectfully submitted,

By: Steven B Cummings